**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STERLING FEDERAL BANK, F.S.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 07-C-2922 |
| | ) | |
| CREDIT SUISSE FIRST BOSTON | ) | Judge Robert M. Dow, Jr. |
| CORPORATION, also known as Credit Suisse | ) | |
| Securities (USA) LLC, CREDIT SUISSE | ) | |
| FIRST BOSTON MORTGAGE SECURITIES | ) | |
| CORP., DLJ MORTGAGE CAPITAL, INC., | ) | |
| SELECT PORTFOLIO SERVICING, INC. and | ) | |
| BANK OF NEW YORK, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sterling Federal Bank, F.S.B. ("Sterling") filed a Second Amended Complaint against Credit Suisse First Boston Corporation, a/k/a Credit Suisse Securities (USA) LLC ("Credit Suisse"), Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse Mortgage"), DLJ Mortgage Capital, Inc. ("DLJ"), Select Portfolio Servicing, Inc. ("Select"), and Bank of New York based on its purchase of security certificates issued by Credit Suisse Mortgage. Defendants Credit Suisse, Credit Suisse Mortgage, DLJ, and Select (hereinafter collectively referred to as the "Credit Suisse Defendants") move to dismiss [61] Counts I (negligent misrepresentation against Credit Suisse), II (false information negligently supplied against Credit Suisse), III (common law fraud against Credit Suisse), IV (breach of fiduciary duty against Credit Suisse), V (negligent misrepresentation against Credit Suisse Mortgage), VI (false information negligently supplied against Credit Suisse Mortgage), VII (common law fraud against Credit Suisse Mortgage), VIII (breach of contract against DLJ), IX (breach of fiduciary

duty against Select), X-XII (breach of contract against Select), and XVI (civil conspiracy against all Defendants). Defendant Bank of New York moves to dismiss [57] Counts XIII-XIV (breach of contract), XV (breach of fiduciary duty), and XVI (civil conspiracy). For the following reasons, the Court grants in part and denies in part the Credit Suisse Defendants' motion to dismiss and grants in part and denies in part Bank of New York's motion to dismiss.

## I.     Background[1]

This case concerns the purchase by Plaintiff Sterling of securities that later declined in value because of problems with the mortgages that served as collateral for the securities. Plaintiff Sterling is a federal savings bank chartered under the laws of the United States, with its principal place of business in Sterling, Illinois. Credit Suisse is a Delaware corporation, with its principal place of business in New York, New York. Credit Suisse is a securities broker-dealer registered with, and licensed to do business in, the State of Illinois. Credit Suisse also is registered with the United States Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers, Inc. ("NASD"). As such, Credit Suisse is subject both to the laws of the United States and the State of Illinois, and to the pertinent rules and regulations promulgated by the SEC. Credit Suisse Mortgage, DLJ, and Select are affiliates of Credit Suisse. Both Credit Suisse Mortgage and DLJ are Delaware corporations, each of which has its principal place of business in New York, New York. Select is a Utah Corporation, with its principal place of business in Salt Lake City, Utah. Bank of New York is a commercial bank chartered under the laws of New York and has its principal place of business in New York, New York.

---

[1] The following facts are taken from Plaintiff's second amended complaint. For present purposes, the Court accepts the allegations in the complaint as true, as precedent instructs. See, *e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). At this juncture, the Court takes no position on whether any of the allegations are, in fact, well-founded.

On November 29, 2001, Credit Suisse Mortgage issued a series of Mortgage-Backed Pass-Through Certificates (the "Certificates"), titled Series 2001-28. The Certificates were collateralized by pools of sub-prime residential real estate mortgages, located in Illinois and elsewhere, which DLJ had purchased and later sold to Credit Suisse Mortgage.[2] On November 30, 2001, Credit Suisse purchased the Certificates from Credit Suisse Mortgage in order to sell individual bundles ("tranches") of the Certificates to purchasers on the open market. In order to facilitate the sale of the Certificates, Credit Suisse published a Prospectus and a Prospectus Supplement, on October 23, 2001, and November 29, 2001, respectively. Both of those documents were prepared and issued with the input, advice, and consent of DLJ, Credit Suisse Mortgage, Vesta Servicing, L.P. ("Vesta," a predecessor in interest to Select), and Bank One National Association as trustee ("Bank One," a predecessor in interest to Bank of New York).

The Prospectus Supplement provided that "[n]o mortgage loan [included in the pool collateralizing the Certificates] will be delinquent more than 30 days as of the cut-off date," which was defined in the Prospectus Supplement as November 1, 2001. It further provided that in the event of a breach of any representation or warranty relating to a mortgage loan that materially and adversely affects the interest of the certificateholders in that mortgage loan, the seller of that mortgage loan would be obligated to do one of the following: "(i) cure that breach; (ii) repurchase that mortgage loan * * *; or (iii) substitute a replacement mortgage loan for that mortgage loan within two years of the closing date." Additionally, it stated that credit support would be provided by over-collateralization of $2,286,915.00, which would be properly administered. Finally, the document provided that fraudulent mortgage loans would be put back

---

[2] According to the complaint, the collateral for Series 2001-28 consisted of a mortgage pool divided into two groups of mortgage loans, which had a total aggregate principal balance of $304,921,701.

to DLJ, that the mortgage loans would be properly serviced, and that insurance claims would be properly filed and pursued.

Credit Suisse Mortgage took additional steps in order to facilitate the sale of the Certificates. On October 23, 2001, it created a trust to hold the Certificates for the benefit of certificateholders, to be administered by Bank One as trustee. Credit Suisse Mortgage also acquired a level mortgage guaranty insurance policy for the benefit of the trust loan. On November 1, 2001, Credit Suisse Mortgage entered into a Pooling and Servicing Agreement (the "PSA") with, among others, DLJ, Vesta, and Bank One as trustee. In that agreement, DLJ warranted that, with respect to any mortgage loan covered by the PSA, (i) all payments due prior to the cut-off date (November 1, 2001) for such Mortgage Loan had been made as of the Closing Date (November 30, 2001); (ii) the Mortgage Loan was not delinquent in payment more than thirty days; and (iii) there were no material defaults under the terms of the Mortgage Loan. Additionally, the PSA stated that "[n]o fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to a Mortgage Loan has taken place on the part of Seller or the Mortgagor, or to the best of the Seller's knowledge, on the part of any other party involved in the origination of the Mortgage Loan." Upon discovery of any breach of a representation or warranty that materially and adversely affects the interests of any certificateholder, the PSA required the Seller (DLJ) to cure the breach. However, if the breach occurred prior to the second anniversary of the Closing Date, the Seller (DLJ) would have the option of either supplying a substitute mortgage loan for the loan that caused the breach or repurchasing the subject mortgage loan.

The instant lawsuit has arisen from Plaintiff's purchase of tranches of the Certificates, including the tranches identified as Security I-B-1, in December 2002 and January 2003.[3] After Plaintiff's purchase, Security I-B-1 suffered a series of rating downgrades from Moody's Rating Service, beginning in January 2005.[4] Plaintiff alleges that the rating downgrades were the fault of the Defendants. Specifically, Plaintiff contends that the Prospectus, Prospectus Supplement, and PSA contained information that several Defendants knew or should have known was materially false. Because Plaintiff relied heavily upon those documents in deciding whether to purchase the tranches, Plaintiff asserts that it was materially misled. Plaintiff also alleges that several of the Defendants failed to fulfill obligations required of them by those documents.

## II.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief

---

[3]  Each of the two separate purchases included acquisition of the tranches identified as Security I-B-1. Plaintiff purchased $1,000,000 original face amount on December 12, 2002, at a price of 103 23/32 ($1,027,548.00). The current face of I-B-1 at the time of purchase was $990,802.00. Plaintiff then purchased $4,000,000 original face amount on January 29, 2003, at a price of 104 8/32 ($4,117,007.00). The current face of I-B-1 at the time of that purchase was $3,949,168.00.

[4]  As of November 29, 2001, the date of the Prospectus Supplement, Security I-B-1 was rated Aa2 (very low credit risk and eligible for bank investment) by Moody's. This rating was based upon information supplied by Credit Suisse addressing the likelihood that the financial obligations represented by the securities would be honored. Security I-B-1 was still rated Aa2 when purchased by Plaintiff. Thereafter, between January 5, 2005 and May 11, 2007, Security I-B-1 was periodically downgraded to Aa2*-, A3, A3*-, Baa3, Baa3*-, and finally B1.

above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)). In other words, the complaint must allege the "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Plaintiff's fraud claims (Counts III and VII) will be viewed under that standard.

Finally, "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992). Recognizing the wisdom of the Seventh Circuit's advice, the Illinois Supreme Court has stressed that "[a] choice-of-law

determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007) (quoting *Barron*, 965 F.2d at 197); see also *Dow v. Abercrombie & Kent Int'l, Inc.*, 2000 WL 688949, at *1 n.1 (N.D. Ill. May 24, 2000). In this case, the parties appear to agree that the applicable legal standards are the same whether the Court applies Illinois law or New York law.

## III. The Credit Suisse Defendants' Motion to Dismiss

### A. Counts I & V: Negligent Misrepresentation against Credit Suisse and Credit Suisse Mortgage

Plaintiff alleges that Credit Suisse and Credit Suisse Mortgage committed negligent misrepresentation through the inclusion in the Prospectus Supplement of the statement "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date."[5] Plaintiff also contends that Credit Suisse and Credit Suisse Mortgage erred in failing to "sticker" (an industry term meaning "update") the documents available to and relied upon by the investing public to reflect negative information regarding Security I-B-1's underlying mortgage pool.

In order to state a claim for negligent misrepresentation under New York law, a plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). Where no actual privity exists, a plaintiff must prove "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that

---

[5] This claim is not governed by the heightened pleading standard of Rule 9(b). See *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

reliance." *Wey v. N.Y. Stock Exchange*, 2007 WL 1238596, at *7 (N.Y. Sup. Ct. April 10, 2007) (quoting *Parrot v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 484 (2000)).

Defendants Credit Suisse and Credit Suisse Mortgage argue that Plaintiff's negligent misrepresentation claims fail under New York law because the Second Amended Complaint contains no allegations of a special or privity-like relationship between Plaintiff and Defendants. Plaintiff, however, has made the necessary factual assertions to "plausibly suggest" that it is entitled to relief on its negligent misrepresentation claims under New York law.  Plaintiff states that Defendants "should have known that third party purchasers would rely on the information in the Prospectus Supplement when purchasing the Certificates or any part thereof." [53 at ¶ 21.]  In fact, Plaintiff explains that the Prospectus Supplement specifically instructed potential investors: "You should rely on the information contained in this document or to which we have referred you in this prospectus supplement.  We have not authorized anyone to provide you with information that is different."  Plaintiff also asserts that it "reasonably and justifiably" relied on the statements included in the Prospectus Supplement and that it would not have purchased the securities if it had been provided with accurate statements.  Those assertions are sufficient because they suggest that: (1) Defendants Credit Suisse and Credit Suisse Mortgage knew that the Prospectus Supplement would be used for the particular purpose of making investment decisions regarding the Certificates; (2) Plaintiff, a known party as a member of the investing public, reasonably relied upon the false statement in deciding to purchase Security I-B-1; and (3) the Credit Suisse Defendants linked themselves to Plaintiff and other investors by including in the Prospectus Supplement an explicit instruction to investors that they should rely exclusively upon the information provided by Defendants when making investment decisions regarding the

securities, which evinced an understanding that the information would be relied upon for that particular purpose.

Illinois law requires that a plaintiff claiming negligent misrepresentation plead and prove:

> (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information.

*Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 335 (7th Cir. 1999). Illinois law does not require privity for claims of negligent misrepresentation, instead obliging a plaintiff to show that "the defendant knew the information would be used and relied upon and the potential liability was restricted to a comparatively small group." *C.C. Indus., Inc. v. ING/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813 (N.D. Ill. 2003).

Defendants Credit Suisse and Credit Suisse Mortgage argue that Plaintiff's negligent misrepresentation claims fail under Illinois law, because the Second Amended Complaint does not assert that Sterling was a member of a "small group" that the Defendants knew of and intended to reach. In fact, the Second Amended Complaint does contain just such an assertion, although the relevant language is included under other claims. Under its claims for "false information negligently supplied for the guidance of others," Plaintiff alleges that "Sterling is one of a limited group of persons for whose benefit and guidance [Credit Suisse and Credit Suisse Mortgage] intended to supply the information contained in the prospectus and the Prospectus Supplement." That language is enough to satisfy the federal pleading requirements set forth in *Bell Atlantic*, as it gives fair notice of the facts upon which Plaintiff makes its negligent misrepresentation claim and brings Plaintiff's possibility of relief above a speculative

level.  See *Bell Atlantic*, 127 S.Ct. at 1964-65.  Defendants' argument that the group to which Plaintiff refers cannot properly be considered a "small" group reaches beyond the scope of the sufficiency of the pleading to the merits of Plaintiff's claim and cannot be considered at this juncture.

Defendants also contend that Plaintiff's negligent misrepresentation claims fail, under either New York or Illinois law, because the Second Amended Complaint contains no factual allegations that would demonstrate actual reliance.  However, a detailed examination of the complaint shows otherwise.  As Plaintiff pointed out in its response, there are multiple instances within the Second Amended Complaint in which Plaintiff states that it "reasonably and justifiably relied on misrepresentations made by [the Credit Suisse Defendants], or the misrepresentations [the Credit Suisse Defendants] made by omission, in deciding to purchase Security I-B-1."  Defendants further argue that any statements to that effect are insufficient without an explicit allegation that Plaintiff received and reviewed the Prospectus and Prospectus Supplement prior to its purchase of the securities.  The Federal Rules of Civil Procedure, however, only require Plaintiff to provide "a short and plain statement," and at this stage the Court must take all of the allegations in Plaintiff's Second Amended Complaint as true.  See Fed. R. Civ. P. 8(a)(2); *Barnes*, 420 F.3d at 677.  Because Plaintiff alleged reliance, and because reading the Prospectus Supplement is an implicit prerequisite to reliance on any statement contained therein, Plaintiff has met its burden.

The Credit Suisse Defendants present two final arguments regarding Plaintiff's negligent misrepresentation claims:  (i) the claims must fail because any reliance upon the Prospectus Supplement would be unreasonable, and (ii) the claims cannot rest upon Defendants' duty to update the Prospectus Supplement.  Both of these arguments are premature, for they ask the

Court to consider the merits of Plaintiff's negligent misrepresentation claims. The Court will not make any determination as to the reasonableness of Plaintiff's reliance at this point in the proceedings, nor will it address whether or not a specific factual allegation considered on its own could properly be the basis for the claims.[6] Moreover, Defendants' updating, or "stickering," argument does not go to the entire claim but only part of the claim. Plaintiff has adequately stated its claims for negligent misrepresentation against Credit Suisse and Credit Suisse Mortgage, which is all that is required to preclude dismissal. Accordingly, the Court denies Defendants' motion to dismiss as to Counts I and V of the Second Amended Complaint.

B.    **Counts II & VI:  False Information Negligently Supplied for the Guidance of Others against Credit Suisse and Credit Suisse Mortgage**

In addition to the claims of negligent misrepresentation, Plaintiff has alleged that both Credit Suisse and Credit Suisse Mortgage are guilty of "false information negligently supplied for the guidance of others." The Credit Suisse Defendants correctly argue that Plaintiff's inclusion of these claims is legally improper. Essentially, "false information negligently supplied for the guidance of others" is the Restatement (Second) of Torts' codification of negligent misrepresentation. To the extent that Illinois recognizes the tort of negligent misrepresentation, it is based on Section 552 of the Restatement. See Restatement (Second) of Torts § 552 (1977); *Harkala v. Wildwood Realty, Inc.* 558 N.E.2d 195, 202 (Ill. App. Ct. 1st Dist. 1990). Therefore, Illinois law does not permit a separate claim of "false information negligently supplied for the guidance of others." New York does not follow the Restatement for

---

[6]  The Court notes that Credit Suisse and Credit Suisse Mortgage specifically instructed Plaintiff to rely on the information in the Prospectus Supplement. [53 at ¶¶ 21, 39, 40, 42, 43.] Although Plaintiff may have had access to up-to-date information regarding the mortgage loans, given that the Prospectus Supplement instructed Plaintiff to rely on the information contained in that document, and that the Court must view the allegations in the light most favorable to Plaintiff, at this juncture the Court is not persuaded by Defendants' "reasonableness" argument. See also *First Bank Richmond, N.A. v. Credit Suisse First Boston Corp.*, 2008 WL 4410367, at *6 (S.D. Ind. Sept. 24, 2008).

negligent misrepresentation claims.  See *Williams & Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1181 (2d Cir. 1993).  Nor does New York recognize a claim for "false information negligently supplied for the guidance of others."  See *id.*  For these reasons, the Court grants Defendants' motion to dismiss Counts II and VI of the Second Amended Complaint.

### C.    Counts III & VII: Common Law Fraud against Credit Suisse and Credit Suisse Mortgage

Plaintiff alleges that Credit Suisse and Credit Suisse Mortgage committed fraud through the inclusion of the misrepresentation that "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date" in the Prospectus Supplement and their subsequent failure to update the Prospectus Supplement to accurately reflect the status of the collateral mortgage loans.

Under Illinois law, the following elements must be included in a claim for fraud: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Ind., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). Similarly, New York requires that causes of action for fraud contain the essential elements of "fact, falsity, scienter, deception and injury."  *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.T.2d 308, 318 (1995).  Specifically, under New York law, a plaintiff must demonstrate:  (1) a material misrepresentation or omission of fact (2) made by the defendant with knowledge of its falsity and (3) an intent to defraud; coupled with (4) reasonable reliance on the part of the plaintiff and (5) resulting damage to the plaintiff.  *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d. Cir. 2006).  A plaintiff alleging fraud or mistake faces a heightened pleading standard, which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Those "circumstances" have been likened by the Seventh Circuit

to the "first paragraph of any newspaper story," meaning that a plaintiff's complaint must include "the who, what, when, where, and how" for fraud claims. *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants Credit Suisse and Credit Suisse Mortgage contend that Plaintiff's fraud claims should be dismissed under either Illinois or New York law for failure to sufficiently plead scienter. Defendants argue that "the most [Plaintiff] alleges is that the complained of actions were 'willful, oppressive and malicious'" (Def. Mem. at 15) and urge the Court to require a factual statement explaining exactly how Defendants knew the status of the mortgage loans. However, the Second Amended Complaint alleges that Credit Suisse Mortgage at one point owned the mortgages at issue; that the Credit Suisse Defendants made the statement "[n]o mortgage loan [that makes up the pool collateralizing the Certificates] will be delinquent more than 30 days as of the cut-off date"; that they made the statement in a November 29, 2001, Prospectus Supplement; that they released the Prospectus Supplement to all potential purchasers; that they knew the statement was false; that they made the statement to induce potential purchasers to purchase the Certificate; and that Plaintiff relied upon the false statements in deciding to purchase Security I-B-1 and suffered injury when the investment proved to be a poor one. [53 at ¶¶ 14, 16, 17, 20, 59, 61, 95, 97.]

The Court finds that Plaintiff's allegations satisfy the "the who, what, when, where, and how" for fraud claims under Rule 9(b). *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990)). The complaint sets forth "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" and also alleges that the Credit Suisse Defendants

intentionally misrepresented a material fact. *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). Taken together, these circumstances afford a basis for concluding that Plaintiff might be able to prove the element of scienter. Furthermore, the Credit Suisse Defendants had a plausible motive for making misstatements that would present the underlying mortgage loans as higher quality and therefore more worthy of investment than they truly were: Defendants wanted to sell all of the Certificates. See *Hampshire Equity Partners, II, L.P. v. Teradyne, Inc.*, 2005 WL 736217, at *3-4 (S.D.N.Y. Mar. 30, 2005) (plaintiff must adequately allege motive and opportunity to commit fraud or specific facts giving rise to strong circumstantial evidence of conscious misbehavior or recklessness). Plaintiff has met its burden for pleading scienter under the heightened pleading standard established by Rule 9(b).

The Credit Suisse Defendants also argue that Plaintiff has not pled facts that establish actual, reasonable reliance. As was true with Plaintiff's negligent misrepresentation claims, the Second Amended Complaint sufficiently pleads reliance. Plaintiff alleges that it "reasonably and justifiably relied on the reputation of [Credit Suisse], the Moody's rating (controlled by [Credit Suisse]) and the various misrepresentations and/or omissions made by [Credit Suisse]" [53 at ¶ 61] and that it "reasonably and justifiably relied on the information provided by [Credit Suisse Mortgage] in deciding to purchase the Certificate Tranches" [53 at ¶ 97]. As noted above, the Court cannot make any determination as to the reasonableness of Plaintiff's reliance at this point in the proceedings. The Court concludes that the Second Amended Complaint contains sufficient allegations that, if true, demonstrate Plaintiff's entitlement to relief for fraud under Illinois and New York law. Therefore, the Court denies the Credit Suisse Defendant's motion to dismiss as to Counts III and VII.

**D.      Counts IV & IX: Breach of Fiduciary Duty against Credit Suisse and Select**

In Counts IV and IX, Plaintiff asserts claims for breach of fiduciary duty against Credit Suisse and Select. In order to state a claim for breach of fiduciary duty, Plaintiff must plead facts to demonstrate the existence of a relationship of trust and confidence. See *Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002); *Zurich Capital Mkts. v. Coglianese*, 332 F. Supp. 2d. 1087, 1120-21 (N.D. Ill. 2004). "The fact that one party trusts the other is insufficient." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). "The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship." *Id*.

Plaintiff did not plead that it engaged in an arms-length negotiation with Credit Suisse or Select. Indeed, Plaintiff did not even plead that it purchased the Certificate directly from any of Defendants. See *Mid-Island Hosp*., 276 F.3d at 130 ("When parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances") (internal quotation marks and citation omitted). Instead, Plaintiff relies on a "dependence" theory – that the information contained in the Prospectus and Prospectus Supplement and a general instruction by the Credit Suisse Defendants to rely on those publications show Credit Suisse's or Select' acceptance of responsibility. However, mere dependence is insufficient unless the party upon which the duty is to be imposed accepts the responsibility of that duty. See *Pommier,* 967 F.2d at 1119. Plaintiff has not pled that Credit Suisse or Select accepted such responsibility. Therefore, the Court grants the Credit Suisse Defendants' motion to dismiss as to Counts IV and IX. See also *First Bank Richmond*, 2008 WL 4410367, at *9.

E.    **Count XVI:  Civil Conspiracy against the Credit Suisse Defendants**

In Count XVI, Plaintiff asserts a claim for conspiracy against the Credit Suisse Defendants and Bank of New York.  In Illinois, the elements of a claim for civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act.  *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2004).  To establish a claim for civil conspiracy under New York law, a plaintiff must demonstrate an underlying tort, plus the following four elements:  "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citations omitted).

Defendants argue that the Court should dismiss the civil conspiracy count because Plaintiff has failed to plead facts that demonstrate an agreement and overt act.  The Second Amended Complaint alleges that "[a]ll of the defendants, acting in concert with one another, conspired and agreed to (i) develop and implement the foregoing scheme to defraud; and (ii) make the material misrepresentations set forth above; and (iii) breach the Pooling and Service Agreement."  [53 at ¶ 155.]  It also states that "Defendants each made over acts in furtherance of the conspiracy as specifically discussed in greater detail above."  *Id*. at ¶ 156.  However, merely alleging that Defendants' "agreed" is not sufficiently specific to support a claim for civil conspiracy under Illinois and New York law.  See *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 509 (7th Cir. 2007); see also *Brownstone Inv. Group, LLC v. Levey*, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007) (citations omitted) ("[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy.  Rather, it must allege

the specific times, facts, and circumstances of the alleged conspiracy."). While Plaintiff has made general allegations that Defendants acted together to defraud Plaintiff, Plaintiff has failed to allege specific details demonstrating the existence of an actual conspiracy. See *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail") (internal quotations omitted). In failing to offer the "critical details regarding the alleged fraud conspiracy," Plaintiff has not stated a claim for civil conspiracy. *Borsellino*, 477 F.3d at 509. Therefore, the Court dismisses Count XVI.

### F.    Breach of Contract (PSA) Claims[7]

Relying on various provisions of the PSA, Plaintiff asserts one breach of contract claim against DLJ (Count VIII) and three against Select (Counts X, XI, and XII).

#### 1.    Standing

First, the Credit Suisse Defendants argue that all of Plaintiff's contract claims against DLJ and Select should be dismissed because Plaintiff failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure.[8] Specifically, the Credit Suisse Defendants argue that Plaintiff

---

[7]    Section 11.03 of the PSA contains a New York choice of law provision. Both New York and Illinois courts enforce such clauses. See *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 n.7 (2d Cir. 2005). Therefore, the Court applies New York law to Plaintiff's breach of contract claims.

[8]    Rule 23.1, governing derivative actions, states:

> (a)    Prerequisites. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

should be required to pursue this action derivatively by making a demand on the Trust because Plaintiff's contract claims assert breaches of obligations owed to the Trust as a whole, not to Plaintiff specifically. If Defendants are correct, any injury sustained by Plaintiff is indirect and based only on Plaintiff's ownership of interests in the Trust.

The Court notes that Rule 23.1 does not require a plaintiff to make a demand, nor does it govern what excuses are acceptable for failing to make a demand. See *Boland v. Engle,* 113 F.3d 706, 710 (7th Cir. 1997). Those issues are governed by state substantive law (*id*.) – here, New York law under the applicable terms of the documents at issue. Under New York law, Plaintiff need not make a demand where "it [wa]s futile to make such a demand." *Velez v. Feinstein,* 451 N.Y.S.2d 110, 115-16 (N.Y. App. Div. 1982).

The Second Amended Complaint alleges in several places that the Trustee was involved in the conduct underlying Plaintiff's claims. For example, the complaint alleges that the Trustee provided input and advice during the preparation of the Prospectus and Prospectus Supplement, and that the Trustee consented to the issuance of those documents. [53 at ¶ 16.] The complaint also alleges that the Trustee knew that the statement "[n]o mortgage loan will be delinquent more than [thirty] days as of the cutoff date" was false. *Id.* at ¶ 17. It further alleges that the Trustee did not protect the certificateholders by pursuing remedies available under the Pooling and

---

(b)    Pleading Requirements. The complaint must be verified and must:
    (1)    allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
    (2)    allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
    (3)    state with particularity:
        (A)    any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
        (B)    the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(a)-(b).

Servicing Agreement to force DLJ to cure the breaches relating to the mortgage loans.  *Id.* at ¶ 26.  Finally, the Second Amended Complaint alleges that the Trustee has failed to comply with multiple requests from Plaintiff for information regarding the mortgages at issue.  *Id.* at ¶¶ 151-52.

Viewing the factual allegations as true and construing them in the light most favorable to Plaintiff, the Court concludes that any demand on the Trustee would have been futile.  Plaintiff essentially would have been asking the Trustee to bring a suit against DLJ for a breach of DLJ's duty under the PSA.  Such a breach would have triggered the Trustee's duty to protect the certificateholders, something that the complaint alleges the Trustee failed to do.  As such, a demand on the Trustee to sue DLJ would have been tantamount to asking the Trustee to bring a suit against itself.  Bank of New York's refusal to provide information to Plaintiff upon request reinforces the Court's conclusion that any demand would be futile.  For all of these reasons, the Court concludes that the Second Amended Complaint alleges sufficient facts to support a finding that any demand on the Trustee would have been futile.  Accordingly, Plaintiff was not required to make a demand on the Trustee.  See Fed. R. Civ. P. 23.1; *Velez,* 451 N.Y.S.2d at 115-16; see also *First Bank of Richmond*, 2008 WL 4410367, at *11.

The Credit Suisse Defendants next argue that Plaintiff failed to comply with the "no action" clause in the PSA.  [53, Ex. C, § 11.07.]  Section 11.07 of the PSA prohibits certificateholders from pursuing a legal remedy under the PSA unless the certificateholder, along with certificateholders holding twenty-five percent of the voting rights for the Certificates, provide notice of an Event of Default to the Trustee.  *Id.* Additionally, the certificateholders must present a written request for the Trustee to commence an action.  *Id.*  Plaintiff contends that compliance with the "no action" clause would be futile.  The Second Amended Complaint

alleges that the Trustee's actions made it impossible for Plaintiff to comply with the Section 11.07. [53 at ¶ 151.] Specifically, Plaintiff asserts that Bank of New York refused to respond to any of Plaintiff's multiple requests for information regarding other certificateholders involved in the transaction. *Id.* Based upon these allegations, the Court concludes that any demand on the Trustee pursuant to Section 11.07 would have been futile.

Finally, the Credit Suisse Defendants argue that Section 7.03 of the PSA precludes Plaintiff's claims because it states that neither DLJ nor Select "shall be under any liability to the Certificateholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment." [53, Ex. C., § 7.03.] However, that section also states that DLJ and Select are not protected against "breach of representations or warranties * * * or from any liability which would otherwise be imposed by reasons of willful misfeasance, bad faith or gross negligence in the performance of duties or by reason of reckless disregard of obligations and duties [under the PSA]." [53, Ex. C, § 7.03]. The Court concludes that Plaintiff has pleaded sufficient facts that, if true, could demonstrate the Credit Suisse Defendants' bad faith. See, *e.g.*, [53 at ¶¶ 19-22, 24-26, 28-29, 106-131.] Section 7.03 therefore does not bar Plaintiff's claims.

### 2. *Counts VIII and XII*

DLJ next argues that Plaintiff's claim against DLJ in Count VIII (breach of contract) fails to satisfy Rule 8(a)(2) for two reasons: (1) the Second Amended Complaint "alleges no facts regarding the underlying mortgage loans or even the identify of those loans" and (2) the allegations fail under Section 2.03(c) of the PSA in any event. Def. Mem. at 20. The first argument essentially attempts to impose a heightened pleading requirement. But under Rule 8, Plaintiff "need only provide a 'short and plain statement of the claim showing that the pleader is

entitled to relief", sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo,* 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)); see also *The Alpine Group, Inc. v. Johnson*, 2002 WL 10495 (S.D.N.Y. 2002) ("Breach of contract claims need not be pled with the same level of particularity as fraud claims"). The Second Amended Complaint alleges that Select has failed to report loan information to the Trustee and that the Trustee has failed to provide monthly statements to the certificateholders. [53 at ¶¶ 120-22, 135-38.] Defendants argue that dismissal is appropriate because Plaintiff has not supplied sufficient information in its complaint, but that is the very information that Plaintiff contends has not been provided to it, in breach of Defendants' obligations to do so. As it stands, the complaint sets forth not only the contractual provision that DLJ breached but also facts to demonstrate how DLJ breached its duties. [53 at ¶¶ 22, 24-25, 101-105.] That is sufficient under the notice pleading standard of Rule 8(a)(2). See *Tamayo,* 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)).

However, the Court finds Defendants' second argument more persuasive. Under Section 2.03(c), the remedy for a breach of that section is limited to specific performance. [53, Ex. C, § 2.03(c)] ("[T]he obligation under this Agreement of any Person to cure, repurchase or substitute any Mortgage loan as to which a breach has occurred and is continuing shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders"). New York courts enforce contractual limitations on remedies. See, *e.g., Mom's Bagels of N.Y., Inc. v. Sig Greenbaum, Inc.,* 559 N.Y.S.2d 883, 885 (App. Div. 1990). Plaintiff argues that Defendants' position is "non-sensical," because "the very point of the breach of contract action against DLJ is that it has not 'cure[d], repurchase[d], or substitute[d] any Mortgage Loan as to which breach has occurred and is continuing * * *.'" Pl. Resp. at 29. The Court recognizes that Plaintiff has pled DLJ's breach of duties; however, Plaintiff's complaint alleges only its entitlement to remedial

(money) damages and not specific performance. Accordingly, Plaintiff has not properly pled its entitlement to the relief requested on this claim. Therefore, the Court grants Defendants' motion as to Count VIII.

Count XII of Plaintiff's Second Amended Complaint alleges the same breach against Select as Count VIII alleges against DLJ. Select and Plaintiff made the same arguments as to Count XII that DLJ and Plaintiff made regarding Count XII. Therefore, because Count XII only sets forth Plaintiff's entitlement to remedial damage – and not specific performance as required under the PSA – the Court grants Defendants' motion as to Count XII.

### 3. Count X (breach of contract against Select (affirmative actions))

Plaintiff asserts that Select breached Sections 3.09 and 3.11 of the PSA by failing to pursue insurance claims on the mortgages loans and by failing to satisfy its obligation to foreclose on "delinquent" mortgage loans. Select first argues that the complaint "fail[s] to provide adequate notice and demonstrate a plausible entitlement to relief under Federal Rule 8(a)(2)." Def. Mem. at 21. According to Select, Rule 8(a)(2) requires Plaintiff to plead details regarding the exact mortgage loans involved. Select is mistaken. Rule 8(a)(2) does not require such specific pleading. Rather, as explained above, Plaintiff "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo,* 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)). At this stage, Plaintiffs are not required to plead exactly which mortgage loans are in default.

Defendants also argue that Plaintiff fails "to allege a breach under the plain terms of the relevant provisions." However, the complaint sets forth the contract provisions that Plaintiff alleges Select breached, as well as factual allegations that, if true, demonstrate that Select did in

fact breach its duties under the PSA. Specifically, the Second Amended Complaint alleges that Select:

> 26.     * * * as servicer [has not] * * * protected the Certificateholders, including Sterling, by pursuing the remedies available under * * * the [PSA] to force DLJ to cure the breaches relating to the subject Mortgage Loans, or caused DLJ to provide substitute collateral for the Mortgage Loans, or caused DLJ to repurchase the Mortgage Loans * * * *

> 117.     * * * was obligated to (a) pursue claims for insurance coverage regarding the loans in the pool * * * and (b) foreclose on delinquent loans.

> 118.     * * * breached the [PSA] by failing to enforce its rights and carry out its duties under §§ 3.09 and 3.11 of the [PSA].

At this stage, these allegations satisfy the pleading requirements, and therefore the Court denies Defendants' motion to dismiss Count X.

### 4.     Count XI (breach of contract against Select (reporting))

Select argues that Count XI should be dismissed because Select's duty to report was activated only upon request and Plaintiff failed to allege that such a request ever was made. In response, Plaintiff argues that the required request did not necessarily have to come directly from Plaintiff. Rather, Plaintiff contends, under the explicit language of the PSA, the request could have been made by one of the co-defendants. [DE 53 at ¶ 122] ("Under the [PSA], [Select] was obligated to provide loan information to the Trustee * * *"). Whether evidence of such a written request exists and can be located requires discovery regarding communications between Select and its co-defendants. See *First Bank of Richmond*, 2008 WL 4410367, at *13. Therefore, the Court denies Defendants' motion to dismiss Count XI.

## IV.     Bank of New York's Motion to Dismiss

Plaintiff asserts four separate claims against Bank of New York. Counts XIII and XIV allege breach of contract against Bank of New York, Count XV alleges a breach of fiduciary

duty, and Count XVI alleges civil conspiracy. As set forth above, because Plaintiff has not stated a claim for civil conspiracy, Count XVI is dismissed as to all Defendants. Before addressing the specific arguments concerning the remaining claims against Bank of New York alone, the Court addresses some general arguments.

Bank of New York first argues that "Plaintiff has failed to allege any basis to impose liability on BNY for the alleged conduct of a twice-removed predecessor trustee." BNY Mem. at 6. Bank of New York notes that it purchased its interest in the Trust in an asset sale from JP Morgan Chase, which acquired its interest by merging with the original Trustee (Bank One). And, on the basis of that chain of events, Bank of New York contends that it is not responsible for the liability of its predecessor. *Id.* at 7-8. However, as Plaintiff points out, Bank of New York's liability for Bank One's actions depends on several aspects of the asset sale – and, in particular, (i) whether Bank of New York expressly or impliedly agreed to assume Bank One's liability, (ii) whether the asset sale amounted to a consolidation or merger, (iii) whether Bank of New York is merely a continuation of Bank One, or (iv) whether the asset sale was entered into fraudulently to escape liability. See *Leannais v. Cincinnati, Inc.* 565 F.2d 437, 439 (7th Cir. 1977); *Greenberg v. Miami Children's Hosp. Research Institute*, 208 F. Supp. 2d 918, 924 (N.D. Ill. 2002); *Heights v. U.S. Elect. Tool Co.*, 525 N.Y.S.2d 653, 654 (N.Y.A.D. 2 Dept. 1988). Discovery will be necessary to determine whether any of these four contingencies was satisfied in regard to the transaction between Bank of New York and JP Morgan Chase (Bank One). See *Pollack v. Laidlaw*, 1995 WL 261518, at *19 (S.D.N.Y. May 3, 1995) ("determination of successor liability * * * depends at least in part on the content of the agreements subject to discovery * * * *").

Next, like the Credit Suisse Defendants, Bank of New York argues that Plaintiff failed to comply with the "no action" clause in § 11.07 of the PSA. However, as discussed above, Plaintiff adequately has alleged that BNY made compliance with § 11.07 impossible by refusing to provide Plaintiff with information. Therefore, Plaintiff's failure to comply with § 11.07 is excused at the motion to dismiss stage.

## A.    Count XIII (Breach of Contract (Information to Rating Agencies))

Count XIII alleges that Section 11.05 of the PSA required Bank of New York to provide certain information to Rating Agencies. [53 at ¶¶ 132-34.] Specifically, § 11.05 provided that Bank of New York must notify the rating agencies in writing "(a) of any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgages Loans; (c) of the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) any Mortgage Loan repurchased in accordance with the [PSA]." [53 at ¶ 134.] Although the complaint alleges that BNY had duties to provide that information to rating agencies, Plaintiff fails to allege that Bank of New York breached any of those duties. The Second Amended Complaint simply states the duties and then requests relief, without any allegation that one (or more) of the five events occurred that may have triggered Bank of New York's duty to perform under § 11.05. Plaintiff's response to the motion to dismiss similarly fails to provide any additional argument or allegations as to this count. See, e.g., *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006) (quoting *Dausch v. Ryske*, 52 F.3d 1425, 1428 n.3 (7th Cir. 1994)) ("the facts asserted in the memorandum filed in opposition to the motion to dismiss, but not contained in the complaint, are relevant to the extent that they could be proved consistent with the allegations"). Although the Court is obliged to

draw all reasonable inferences in Plaintiff's favor, it cannot read allegations into the complaint that do not exist. Therefore, the Court grants Bank of New York's motion to dismiss Count XIII.

**B.    Count XIV (Breach of Contract (Information to Certificateholders))**

In Count XIV, Plaintiff alleges that § 4.04 of the PSA requires Bank of New York to provide monthly statements to certificateholders regarding various aspects of the mortgage loans and the Certificates, and that BNY breached its duty under § 4.04 by failing to provide full and accurate information to Plaintiff. [53 at ¶ 138.] In seeking dismissal, Bank of New York argues that, although it had a duty under the PSA to report information to the certificateholders, the required information was limited to that which Bank of New York received from the servicers of the loans. The argument rests on the following language in § 4.04: "The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from each Servicer[.]" *Id.*, Ex. C at § 4.04(a). Bank of New York contends that Section 4.04 explicitly limits the Trustee's duty to acquire and report only information that it actually receives, and that the Second Amended Complaint fails to allege that Bank of New York received such information. However, the complaint alleges that Bank One knew or should have known that the trust contained multiple delinquent loans. [53 at ¶ 19.] That allegation implies that Bank of New York received information that it should have reported. Additionally, liability also might arise if Bank of New York turned a blind eye to delinquent loans. Taking the allegations in the complaint as true, Plaintiff has stated a breach of contract claim under the PSA, and Bank of New York's motion to dismiss Count XIV is denied.

**C.    Count XV (Breach of Fiduciary Duty)**

In Count XV, Plaintiff alleges that Bank of New York breached various fiduciary duties imposed upon it in its capacity as Trustee. [53 at ¶¶ 140-53.] A cause of action for breach of

fiduciary duty has three elements: (1) breach by a fiduciary of a duty owned to the plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Green v. Beer*, 2007 WL 576089 at *3 (S.D.N.Y. Feb. 22, 2007); *Cement-Lock v. Gas Technology Institute*, 2005 WL 2420374 at *16 (N.D. Ill. Sept. 30, 2005). The test for whether parties enjoyed a fiduciary relationship is fact-specific, but the principal question is whether "a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." *Wiener v. Lazard Freres & Co*., 672 N.Y.S.2d 8, 14 (App. Div. 1998). "[T]he requisite high degree of dominance and reliance must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it." *Green,* 2007 WL 576089 at *3 (citation omitted).

Generally, an indenture trustee only owes a duty to perform its ministerial duties with due care, but does not owe a fiduciary duty to certificateholders. See, *e.g., AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.,* 2008 WL 2510628 (N.Y. Ct. App. June 25, 2008). An indenture trustee's fiduciary duties thus are more limited in scope than the duties of an ordinary trustee. See *Williams v. Continental Stock Transfer & Trust Co*., 1 F.Supp.2d 836, 840 (N.D. Ill. 1998). Under New York law, the duties of an indenture trustee prior to default "are strictly defined and limited to the terms of the indenture." *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,* 838 F.2d 66, 71 (2d Cir. 1988) (citations omitted); *New York State Medical Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.,* 621 N.Y.S.2d 466, 470 (N.Y. Sup. Ct. 1994). However, New York courts have placed two extra-contractual duties on an indenture trustee prior to the occurrence of default. First, the indenture trustee must avoid conflicts of interest, and second, the indenture trustee must perform all basic, non-discretionary, ministerial tasks. *LNC Investments., Inc. v. First Fidelity Bank, Nat'l Ass'n,* 935 F.Supp. 1333, 1347 (S.D.N.Y. 1996).

Plaintiff argues that Bank One, as predecessor to Bank of New York, "was in a position to prevent financial injury to the certificateholders" and "had an obligation to [act fairly and honestly toward the certificateholders] because it was placed in a position of trust in which it was required to manage the securities for the benefit of the certificateholders." Pl.'s Resp. to BNY at 11-12. Based on the cases cited by Plaintiff, Plaintiff also appears to suggest a conflict based on the fact that Bank of New York received a fee for services rendered. However, the Second Amended Complaint does not provide a factual basis for inferring such a conflict. Nor does Plaintiff offer any evidence, contractual or otherwise, suggesting that Bank of New York's responsibilities toward the certificateholders rose to the level of fiduciary duties in any event. See *First Bank of Richmond*, 2008 WL 4410367, at *15. Therefore, the Court grants Bank of New York's motion to dismiss Count XV.

## V.     Conclusion

For the foregoing reasons, the Court denies the Credit Suisse Defendants motion to dismiss as to Counts I, III, V, VII, X, and XI and grants the motion as to Counts II, IV, VI, VIII, IX, XII, and XVI. In addition, the Court denies Bank of New York's motion to dismiss as to Count XIV and grants the motion as to Counts XIII, XV, and XVI.

Dated:  November 14, 2008                     _____
                                                                    Robert M. Dow, Jr.
                                                                    United States District Judge